## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

CRIMINAL CASE NO. 1:18-cr-00305-RBJ

UNITED STATES OF AMERICA,

        Plaintiff,

v.

1.     HENRY BETETA,

        Defendant.

---

## RULE 11(c)(1)(A) and (B) PLEA AGREEMENT AND STATEMENT
## OF FACTS RELEVANT TO SENTENCING

---

The United States of America, by and through Robert C. Troyer, United States Attorney for the District of Colorado, Jaime A. Peña, Assistant United States Attorney, Richard Ferro, Special Assistant United States Attorney, and the defendant, Henry Beteta, personally and by counsel, Shira Kievel, Assistant Federal Defender, submit the following Plea Agreement and Statement of Facts Relevant to Sentencing pursuant to D.C.COLO.LCrR 11.1 and Fed. R. Crim. P. 11(c)(1)(A) and (B).

### I. PLEA AGREEMENT

Defendant Henry Beteta (sometimes referred to herein as "Beteta") agrees to plead guilty to Counts One and Two of the Information charging a violation of Title 18, United States Code, Section 1347 (Health Care Fraud).

**General Provisions**.

Should the defendant meet his obligations as set forth in this agreement, including (1) providing truthful testimony whenever requested by the Government, (2) assisting the Government and victims in determining the exact loss amounts, and (3) assisting the Government in the

1

COURT
EXHIBIT
1

recovery of assets subject to restitution (which the parties stipulate is $3220.50 to Medicare and $5733.86 to Colorado Medicaid), the Government will agree not to seek an upward departure or variance pursuant to the advisory Sentencing Guidelines and applicable law. The Government, in its sole discretion, **may** make a sentencing recommendation **as low as 5 years of probation** at the time of sentencing, within the law and the factors outlined in 18 USC 3553(a), to assist the Court in determining a just sentence.

## II. ELEMENTS OF THE OFFENSE

The elements of Counts One and Two are as follows:

### Elements of Healthcare Fraud

*First*: the defendant knowingly executed or attempted to execute a scheme or artifice to defraud the Medicare and Medicaid programs by means of false or fraudulent pretenses, representations, or promises;

*Second*: the Medicare and Medicaid programs were a healthcare benefit program within the meaning of the law;

*Third*: the defendant acted with intent to defraud;

*Fourth*: the false or fraudulent pretenses, representations, or promises that the defendant made were material, meaning they would naturally tend to influence, or were capable of influencing the decision of the Medicare and Medicaid programs.

## III. STATUTORY PENALTIES

The maximum statutory penalty for the violations of Counts One and Two, Title 18 U.S.C. § 1347 (Health Care Fraud), is a term of imprisonment of not more than 10 years imprisonment, not more than $250,000 fine, or both; 3 years supervised release; and a $100 Special assessment fee, on each count.

There is no applicable statutory minimum sentence of imprisonment. The conviction may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury. A conviction may also affect a defendant's immigration status and

rights.  A violation of the conditions of probation or supervised release may result in a separate prison sentence.

## IV.  STIPULATION OF FACTS

1.   The parties agree that there is a factual basis for the guilty pleas that the defendant will tender. That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offenses of conviction, consider relevant conduct, and consider the factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the plea agreement.

2.   This stipulation of facts does not preclude either party from hereafter presenting the Court with additional facts which do not contradict facts to which the parties have stipulated and which are relevant to the Court's guideline computation, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

3.   The parties agree that pursuant to 18 USC § 3663(a)(3) the defendant will pay restitution as ordered by the Court to any victim of the offenses to which the defendant is pleading guilty and any other persons directly and proximately harmed as a result of the fraudulent conduct of the defendant. The parties agree that the Court may consider all relevant conduct, whether charged or not, in determining the victims and assessing restitution. The parties also agree and understand that the Court may, in its discretion, make this restitution obligation a part of any term of probation or supervised release, if applicable.

4.   The parties agree that the date on which conduct relevant to the offense (U.S.S.G. § 1B1.3) began is in or about October 2015 and continued until in or about November 2015.  The parties agree that the Government's evidence would be as follows:

In October and November 2015, Henry Beteta through his employees, agents, and utilizing his business, "The Shoe Fitters," executed a scheme to defraud when he submitted and caused to be submitted to Medicare and Medicaid billing for lower leg braces and other orthopedic durable equipment for patients that never received those items. The braces constituted a health care item or service, that Medicare and Medicaid paid for in reliance upon the accuracy of the bills received from Beteta or at his direction. Both Medicare and Medicaid are healthcare benefit programs within the meaning of 18 USC, Section 1347. Beteta knew that when he submitted the billings for the following individuals, that the billings were false and sought payment for services and items he never provided. Subsequent to receiving the bills, Medicare and Medicaid paid for the items and services reflected in the billings for patients/beneficiaries (identified by initials), as follows:

**Medicaid**

October 12, 2015, Patient/ Recipient / Beneficiary: **S.O.**, $1,933.70, Item: Custom fabricated orthoses (lower leg brace);

October 16, 2015, Patient / Recipient / Beneficiary: **G.C.**, $1,866.46, Item: Custom fabricated orthoses (lower leg brace);

October 26, 2015, Patient / Recipient / Beneficiary: **L.M.**, $1,933.70, Item: Custom fabricated orthoses (lower leg brace).

**Medicare**

November 12, 2015 Patient / beneficiary: **C.S.**, $3,220.50, Item(s): Orthopedic shoes and lower leg brace.

*The Evidence*:

This matter has been under investigation by FBI, HHS-OIG, and MFCU since April 8, 2014. The federal investigation began after a referral was received by FBI Headquarters from Health Integrity regarding a

4

complaint that a beneficiary had not received the braces and orthotics that were billed to Medicare in addition to the diabetic shoes which were received but did not fit.

Colorado Secretary of State records indicate The Shoe Fitters was formed on March 1, 1995. The Shoe Fitters is a footwear, orthotic and prosthetic service center solely owned and operated by Henry Beteta at 910 16th Street, Suite 630, Denver, Colorado 80202.

The United States Department of Health and Human Services, through the Centers for Medicare and Medicaid Services (CMS), administers the Medicare Program, which is a federally-funded medical benefits program to provide health care services generally to the elderly and disabled. Provider participation in the Medicare program is voluntary. A participating provider is a person, organization, or institution with a valid participating physician or supplier agreement. HHS-OIG is charged with investigating fraud against Medicare. To participate in the Medicare program, a supplier of Durable Medical Equipment (DME) must be authorized by the National Supplier Clearinghouse (NSC). NSC contracts with CMS to perform the enrollment activities for the DME suppliers and to communicate eligibility status of the suppliers with each DME Medicare Administrative Contractor (MAC). This allows the DME MAC to process claims for eligible suppliers and reject claims from the ineligible suppliers.

When a provider submits a claim to Medicare, it includes,   among other things, information such as the beneficiary's name, address, and date of birth, Medicare's personal identification number, date and type of service provided, place of service, procedure code, diagnosis code, amount billed, and other relevant medical information. On the reverse side of the CMS 1500, there are notices and information to the provider:

"Any person who knowingly files a statement of claim containing any misrepresentation or any false, incomplete or misleading information may be guilty of a criminal act punishable under law and may be subject to civil penalties.

Anyone who misrepresents or falsifies essential information to receive payment from Federal funds requested by this form may upon conviction be subject to fine and imprisonment under applicable Federal laws."

Claims are reviewed, processed and, if approved, paid to providers via mail or electronically to their bank account. To receive Medicare reimbursement, providers of services to Medicare beneficiaries must make appropriate application to the NSC and execute a written Provider Agreement. The Provider Agreement obligates the provider to know, understand, and follow all Medicare regulations and rules. In the Medicare provider enrollment application, under section #15 Certification Statement, items #7 and #8 state:

"I understand that the Medicare billing number (such as the National Provider Identifier (NPI) number) issued to me can only be used by me or by a provider or supplier to whom I have reassigned my benefits under current Medicare regulations, when billing for services rendered by me. I will not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare, and will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity."

In presenting claims to Medicare, Medicaid, and other third party payors, providers use numeric "codes" taken from a manual of Physicians Current Procedural Terminology, known as "CPT codes," to describe the service they provided. CPT codes are products of the American Medical Association (AMA) and its body of physicians of every specialty, who determine appropriate definitions for the codes. By submitting claims using

6

these CPT codes, providers represent to Medicare, Medicaid, and other
insurances that the services depicted in the codes were, in fact, performed
and/or provided. Reimbursement rates for the CPT codes are set through a
"fee schedule" created by Medicare. The fee schedule outlines the
maximum amount the government and/or the insurance company allows
the provider to collect for a given service.

All Medicare and/or Medicaid providers are issued or have access
via the Internet to provider manuals and updates (provider bulletins) which
explain how to bill the Medicare and Medicaid programs, as well as
explaining other information pertinent to acting as a Medicare and/or
Medicaid provider.

According to Medicare and Medicaid records, Beteta and The
Shoe Fitters are Medicare and Medicaid providers that regularly bill
Medicare and Medicaid for services and durable medical equipment.

Medicaid is a jointly-funded federal and state program to provide
health care services to the categorically needy. The Colorado Department
of Health Care Policy and Financing (HCPF) is the single state agency
that administers and monitors the Medicaid program in Colorado. HCPF
is assisted by its contract fiscal intermediary, Xerox, 518 17th Street,
Suite 400, City and County of Denver, Colorado 80202.

Provider participation in the Medicaid program is voluntary. A
participating provider is a person, organization, or institution with a valid
participation agreement. The provider signs a Provider Participation
Agreement which states:

"Provider, and person signing the claim or submitting electronic
claims on provider's behalf, understand that failure to comply with
any of the above in a true and accurate manner will result in any
available administrative or criminal action available to the
Department, the State Attorney General's Medicaid Fraud Control
Unit, or other government agencies. The knowing submission of
false claims or causing another to submit false claims may subject

7

the persons responsible to criminal charges, civil penalties, and/or forfeitures."

The provider submits either a hard copy claim (Health Insurance Claim Form, HCFA 1500) or electronically submits claims to the Medicaid program's fiscal intermediary. When a provider submits a claim to Medicaid, it includes information such as the beneficiary's name, address, and date of birth, Medicaid identification number, date and type of service provided, place of service, procedure code, diagnosis code, amount billed, and a unique numerical revenue code that represents a specific service rendered to or for the recipient. Providers are required to maintain legible records necessary to disclose the nature and extent of goods and services provided to Medicaid recipients for a minimum of six years.

Upon receipt of Medicaid claims, the fiscal agent (Xerox) processes the claims and advises the department of the amount to be paid to the provider. The department then prepares and pays the claim, either in the form of a state warrant mailed to the provider or representative, or by electronic funds transmission to the bank account of the provider or representative, in the reimbursement amount determined by the fiscal agent pursuant to department rules and guidelines.

The Medicaid Provider Participation Agreement was signed by a representative for Beteta on June 17, 2015. The section titled "Payment Reporting and Publication Email Preferences/Publication Email Notification Preference" reads:

> "The Colorado Medical Assistance Program communicates important notices (including time-sensitive information), updates, billing instructions and bulletin links via email as soon as the information is available. Providers are responsible for ensuring that the fiscal agent has their current email address on file. The Colorado Medical Assistance Program is not responsible for

undeliverable notifications due to incorrect email addresses. All
publications are available in the Provider Services section of the
Department's website at Colorado.gov/hcpf."

The email address listed is henryb303@aol.com. The website for The Shoe Fitters
(www.theshoefitters.com) lists the business address as 910 16th Street, Suite 630,
Denver, Colorado 80202, a contact email as henryb303@aol.com, and a telephone
number as 303-423-6712.

On October 27, 2016, in an undercover capacity, FBI SA Schroer
represented she had a mother who might need Beteta's services. SA
Schroer called the above telephone number and spoke to a man that
identified himself as Henry and the owner of The Shoe Fitters. Henry
stated The Shoe Fitters has been in business for sixty years, forty or more
of which have been in Denver. Henry is fifty-eight years old and The
Shoe Fitters is all he has ever done. Henry stated that The Shoe Fitters has
three offices at which patients can be seen, one of which is located at 910
16th Street, Suite 630, near the intersection of 16th Street and Champa
Street in downtown Denver. Henry made two attempts to obtain SA
Schroer's mother's Medicare information during the telephone call in
order to input the information and start processing Medicare paperwork
ahead of the scheduled appointment. SA Schroer did not provide the
information but instead secured an appointment on November 10, 2016, at
The Shoe Fitters. Henry cautioned that it would take longer to get the
shoes if the Medicare information was provided the day of the initial
appointment rather than ahead of time.

On November 1, 2016, in an undercover capacity regarding
follow-up question SA Schroer's mother had concerning identity theft and
the nature in which her Medicare information would be recorded and
stored if provided over the telephone ahead of the scheduled appointment,

SA Schroer called the above telephone number and spoke to Henry who advised that The Shoe Fitters maintains patient files on the computer and in hard copy as required by Medicare and that identity theft would not be an issue.

In order to substantiate and corroborate information previously received that Beteta and The Shoe Fitters were billing Medicare and Medicaid for services and devices not provided, or otherwise fraudulently billing Medicare and Medicaid, an examination of databases maintained by Medicare and Medicaid identified a sample of eighteen beneficiaries of services billed by Beteta and The Shoe Fitters. Those beneficiaries were then interviewed by law enforcement. Many of the beneficiaries indicated they never received the items or services billed by Beteta or The Shoe Fitters.

According to Medicare and Medicaid records, Beteta and The Shoe Fitters billed Medicare and Medicaid via electronic billing submissions using the Internet. Around October and November 2015, the Medicare and Medicaid programs paid for items and services not provided by Beteta or The Shoe Fitters, as described above.

In November 2016, law enforcement executed a search warrant at The Shoe Fitters place of business. Among other things, the search yielded patient files associated with alleged beneficiaries, many of whom did not receive the items or services which were billed to the Medicare and Medicaid programs. Additionally, the normal biller/assistant who conducted the billing practices was interviewed: she stated that Beteta was responsible for the amounts billed, and approved all bills submitted to Medicare and Medicaid. Beteta was interviewed, and he accepted responsibility for the billing practices at The Shoe Fitters.

As part of the scheme to defraud Medicare and Colorado Medicaid, Henry Beteta while doing business as The Shoe Fitters, saw the patients/beneficiaries but knowingly billed for

services and items not provided, or billed for services based upon the false assertion the patients/beneficiaries were seen at his office. These false representations were material in that they resulted in the payment of billings by Medicare and Colorado Medicaid for items and services never provided.

The parties stipulate the restitution amount due to Medicare is $3220.50, and $5733.86 to Colorado Medicaid, respectively.

## V.  ADVISORY GUIDELINE COMPUTATION AND 3553 ADVISEMENT

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. One of the factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

A.     The base guideline provision applicable to this offense is USSG § 2B1.1.  The base offense level is 6; however, because the loss is more than $6500.00, and under $15,000.00, there is an additional 2 levels pursuant to USSG § 2B1.1(b)(1)(B). Therefore, the base offense level is 8.

B.     There is an aggravating adjustment of +2  because the defendant's role was that of an organizer and leader of a criminal activity pursuant to USSG §3B1.1(c). The offense level becomes 10.

C.     The Government does not believe there is an aggravating adjustment of +2 levels pursuant to USSG §3B1.3 because the defendant's billing practice did not use a special skill or constitute a position of trust when the offenses were committed. The

11

offense level remains 10.

D.      Pursuant to USSG § 3E1.1(a), defendant has clearly demonstrated acceptance of responsibility.  A two-level downward adjustment results in an offense level of 8.

E.      The parties understand that the defendant's criminal history computation is tentative. The criminal history category (CHC) is determined by the Court.  At this stage, it appears that the defendant has a limited criminal history, resulting in a CHC of I.

F.      The Guideline range resulting from the estimated offense level of 8, and the tentative CHC of I, is 0 to 6 months.  However, in order to be as accurate as possible, with the CHC undetermined at this time, the estimated offense level could conceivably result in a range from 0 months (bottom of Category I with a base offense level of 8) to 24 months (top of Category VI with a base offense level of 8).

G.      Pursuant to USSG § 5E1.2(c)(3) and Title 18, United States Code, Section 3571, assuming an offense level of 8, the fine range for this offense is $2,000 to $20,000.00 plus applicable interest and penalties.

H.      Pursuant to 18 U.S.C. § 3583(b)(2), the Court may impose a term of supervised release of up to three years.

I.      Restitution is mandatory pursuant to 18 U.S.C. §§ 3556, 3663A, and 3664.

J.      Pursuant to 18 U.S.C. § 3561(c), the Court may sentence this defendant to a term of up to 5 years probation, and may impose conditions it deems appropriate after applying the factors in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3561.

The parties understand that although the Court will consider the parties' estimate, the Court must make its own determination of the guideline range. In doing so, the Court is not bound by the position of any party.

No estimate by the parties regarding the guideline range precludes either party from asking the Court, within the overall context of the guidelines, to depart from that range at sentencing if that party believes that a departure is specifically authorized by the guidelines or that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the United States Sentencing Commission in formulating the advisory guidelines. Similarly, no estimate by the parties regarding the guideline range precludes either party from asking the Court to vary entirely from the advisory guidelines and to impose a non-guideline sentence based on other 18 U.S.C. §3553 factors.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

## VI.  ENTIRE AGREEMENT

This document states the parties' entire agreement.  There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied.  In entering this agreement, neither the Government nor the defendant has relied, or is relying, on any terms, promises, conditions, or assurances not expressly stated in this agreement.

Date: 8/6/18

_____
Henry Beteta
Defendant

Date: 8/6/18

_____
Shira Kievel
Attorney for Defendant

Date: 8/6/18

_____
Jaime A. Peña
Assistant U.S. Attorney

Date: 8/6/18

_____
Richard Ferro
Special Assistant U.S. Attorney