IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No.   1:18-cr-00305-RBJ

UNITED STATES OF AMERICA,

      Plaintiff,

v.

HENRY BETETA,

      Defendant.

---

## SENTENCING STATEMENT
---

      Defendant Henry Beteta, by and through the Office of the Federal Public Defender and undersigned Assistant Federal Public Defender Shira Kieval, asks the Court to follow the Presentence Investigation Report's recommendation of 5 years on probation at his sentencing hearing on November 1. He agrees that the special conditions suggested in the report are appropriate and should be ordered. He agrees to a restitution order of $8,954.36.

**I.    Henry Beteta has worked hard to prove that he is worthy of a probated sentence.**



On a typical weekday morning, Henry Beteta wakes up at 6 or 7am, by himself, in a room above a small warehouse. The building is a block from the railroad tracks that form one of the boundaries of a semi-industrial neighborhood full of businesses like Karmachanics, Englewood Propane, Aap Automation, The Carburetor Shop, and High Plains Gas and Supply. He spends the morning prepping onions, cilantro, lime wedges and tortillas, and then lifts up one of the warehouse doors to open his taco stand to the street by 10:30am. If Street Delicias has not sold as many breakfast burritos and afternoon tacos as he hoped by 4pm, then he spends the next three hours going door to door to the car lots and businesses on Broadway to sell more.



This is physically taxing work for Mr. Beteta, a large man who has difficulty controlling his eating ("I'm a munch") and therefore difficulty controlling his diabetes. In the middle on 2015, he stepped on a piece of glass. His leg was already in bad shape, and the wound would not heel. One year later, he had to have his leg amputated below the knee. His other leg is not in great shape and is being monitored by his doctor.

Mr. Beteta is emotionally drained as well. He talks about having to tell his young children that their father is a "degenerate thief," practicing for a conversation that he wishes he never had to have. He explains, "I turned my back on the country that gave me everything. You can make up in your mind all sorts of excuses. But stealing is stealing, it doesn't matter."

2

Two years ago, in November 2016, when inspectors came to his downtown office to execute a search warrant, Mr. Beteta gave a long statement admitting his conduct. He had already spoken to his secretary about stopping to bill Medicare and Medicaid.[1] He wanted to take responsibility. And according to a transcript of his statement that was provided in discovery, he told investigators this eight separate times while making his statement that day.[2]

When the government subpoenaed additional files that had not been seized that day, Mr. Beteta brought his files to the courthouse – and when he could not find anyone to give them to, he called the prosecutor's office and brought them there. Mr. Beteta called a previous government prosecutor twice offering to come in to talk. The prosecutor would not meet with him without a lawyer. When the prosecutor notified him that his case would be brought to the grand jury in April 2017, Mr. Beteta asked for a Court appointed attorney. Immediately, he requested that his assigned lawyer contact the U.S. Attorney's Office so that he could plead guilty. But the case did not go to grand jury as planned. Mr. Beteta contacted counsel diligently every month for over a year before the government was prepared to move forward with his case.

In the two years since the government appeared at his business door with a search warrant, Mr. Beteta has continued to operate The Shoe Fitters, but he no longer takes Medicare

---

[1] Mr. Beteta's long-time secretary, Gina Francis, confirmed this to government investigators in an April 2017 interview.

[2] "I take responsibility 100%"; "I have to take responsibility for it"; "I have to take responsibility for it"; "I have to take responsibility"; "I take responsibility"; "I have to take responsibility"; "I have to take responsibility for it"; "I'm standing up and raising my hand and saying, 'It's my responsibility.'"

and Medicaid. His clients pay him directly,[3] and he provides them with a receipt detailing exactly what he has provided. If they then want to make a claim against their own insurance company, then they can do so on their own. The company – and the work – help give his life purpose, even if he cannot support himself and his family through this business alone.

And it is something of a family profession. In the 1950s, Henry Beteta's great uncle started making prosthetics and orthotics in New Orleans. His brother Robert worked for his great uncle in the mid-sixties, then for an agency in San Francisco. Then Robert moved to Colorado, where he worked for a few companies before opening his own prosthetics and orthotics business in the late 1970s, Lakewood Brace. Henry, who was about seven years younger than Robert, worked summers for his brother while in high school. A year after he graduated high school, Henry went to work for his brother at Lakewood Brace. About two decades later, Henry split off from Lakewood Brace to open The Shoe Fitters. The brothers continued to collaborate often over the next decade or so, until Robert had an aneurism and closed his business in 2006.

As Robert's employee, Henry Beteta would earn $25,000-$35,000 per year. Work in this field is variable and unpredictable, and on his own he has never turned much of a profit. But he enjoys providing the service, which he sees as a specialty craft that can transform people's lives. He has even more reason to sing the praises of orthotics and prosthetics since losing his own leg. He takes pride operating an independent company in a market dominated by corporations.

Mr. Beteta has always supplemented his income by taking advantage of business opportunities – running other small businesses (like a window and screen business that closed a

---

[3] Gina Francis generally confirms this, telling government investigators in April 2017 that Mr. Beteta now had "more of a 'cash and carry' business . . . [where he] just worked on customizing shoes for feet such as insoles and the customers paid cash."

few years ago), but especially buying and selling real estate. Until the market collapsed a decade ago, he did quite well. With the market collapse, the value of the properties that he owned tanked, leaving him unable to cover his debts. He did his best to negotiate settlements with anyone who would work with him, but the market was not recovering. By the middle of 2011, Henry Beteta had a 3 year old son and a 1 year old son. And he was bankrupt.

After Chapter 7 liquidation, Mr. Beteta expected to rebound. He expected he would be able to earn money as he had in the past, that the market collapse had been a blip. But he did not. In addition to continued financial problems, Mr. Beteta and his wife had marital problems, and eventually decided that living apart would be better for them and their sons. By separating their living quarters, they have been able to maintain a relationship to do things together with their children, as a family. Mr. Beteta is mindful of the fact that his parents had an "awful and violent and horrible" relationship and "no business being together" – and he has worked very hard to make sure that his children are raised in a stable home where they can thrive.

But maintaining two households is expensive. Caring for two growing boys is expensive. Medical insurance and medical payments for any family can be expensive, but they are especially taxing on a person with as poor health as Mr. Beteta. And one thing that Mr. Beteta did not learn from his bankruptcy was how to control his spending. He recognizes this in himself, and he is open to the financial counseling condition that Probation has recommended for him. He remembers that, once upon a time, he gave DUI treatment a chance, and (he believes) it saved his life. It is important to him to pay his restitution to Medicare and Medicaid, to pay his debts to people who have lent him money. Even where people have written off his debt, he hopes someday to be able to pay them what he had owed.

5

**II.      Probation is the correct sentence under 18 U.S.C. § 3553(a).**

Although Mr. Beteta's charges are serious, a sentence of five years of probation is just punishment in this case and recognizes the seriousness of his crime. As the U.S. Supreme Court has recognized, probation is a serious and intrusive form of punishment:

> We recognize that custodial sentences are qualitatively more severe than probationary sentences of equivalent terms. Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty. *See United States v. Knights*, 534 U.S. 112, 119, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) ("Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled'" (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 874, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987); internal quotation marks omitted)). Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. U.S.S.G. § 5B1.3. Most probationers are also subject to individual "special conditions" imposed by the court.

*Gall v. United States*, 552 U.S. 38, 48 (2007).

In this case, the special conditions being recommended by probation will not only be a restriction on Mr. Beteta's liberty, they will also serve to protect the public from Mr. Beteta – to the extent that is even necessary – in that they will force Mr. Beteta to conduct all of his business in the open, with the prior approval of Probation.

In contrast to probation, a custodial sentence has a high potential for destruction in this case. Henry Beteta is 60 years old and in very poor health, and disruption in his medical care would place him at high risk of further, serious complications from his diabetes. It would leave him some months or years older, still with no retirement plan or safety net if his health grows worse. Prison would take him away from his two sons, in whose lives he is actively involved,

6

and who have no other means of support.

Despite his differences with his wife, Mr. Beteta is doing his best to raise his children in a loving and nurturing environment. He has been able to take his few available resources and harness them to run a taco stand that is providing him and his family with a modest income. He would lose the means to continue that business if incarcerated, with no clear entrance back to the working world.

**CONCLUSION**

Folding burritos every morning at Street Delicias is not just a way to make money for Henry Beteta. It is his own prescription for himself to help stave off the anxiety, depression, and guilt that he has felt over the last two years since this fraud was exposed. Staying busy to keep his mind occupied. But also taking control of the situation where he could, proving to himself that he can work hard to earn an honest living. That he is not a degenerate thief after all. Rather, he is a person who committed a fraud, but who will not do so again.

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender


s/Shira Kieval
SHIRA KIEVAL
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
shira.kieval@fd.org
Attorney for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Jaime Pena, AUSA
Email: jaime.pena2@usdoj.gov

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

Henry Beteta                    (via Mail)

Nicole Peterson, USPO        (via Email)


s/Shira Kieval
SHIRA KIEVAL
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
shira.kieval@fd.org
Attorney for Defendant